LOU M. HATFIELD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2399–76. Filed September 12, 1977.

Lou M. Hatfield, pro se.
*Genelle Schlichting,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined the following deficiency in, and additions to, the petitioner's 1974 Federal income tax:

| | | Additions to the tax | |
|---|---|---|---|
| Deficiency | Sec. 6651(a)[1] | Sec. 6653(a) | Sec. 6654 |
| $884 | $221 | $44.20 | $28.29 |

The only issues to be decided are whether the petitioner was obligated to file a Federal income tax return for 1974, and if so, whether the document submitted by her constituted a return for such year.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

At the time the petitioner, Lou M. Hatfield, filed the petition herein, she was a resident of Dallas, Tex.

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

The petitioner filed a Form 1040 for 1974 with the Internal Revenue Service, but in response to all questions regarding her wages and other income, she wrote "Object Self Incrimination." Hence, on such return, she reported no income and showed no tax liability. Her Form W–2 for 1974 showed that she received wages of $6,958.71 on which no tax was withheld.

In his notice of deficiency, the Commissioner determined that the petitioner received income in the amount of the wages reported on her Form W–2 and computed her tax liability on such income. He also determined that she had not filed a return within the meaning of section 6012 and imposed an addition to the tax under section 6651(a) for late filing. In addition, he imposed an addition to the tax under section 6653(a) of 5 percent of the underpayment since he determined that a part thereof was due to negligence or intentional disregard of rules and regulations. Finally, the Commissioner determined that the petitioner underpaid her estimated tax for 1974 and imposed an addition to the tax under section 6654 for such underpayment.

During the trial of this case, the Court repeatedly asked the petitioner if she desired to adduce evidence to dispute the deficiency determinations of the Commissioner, but she refused to do so. Instead, she desired to base her case upon a "Statement of Facts" prepared by the United States Taxpayers Union of El Cajon, Calif. Such document was admitted for the limited purpose of presenting the petitioner's argument. In part, such document states:

The various Banks of the Federal Reserve have borrowed virtually all of the money minted by the United States that was formerly in general circulation, and have borrowed unminted money surpassing fifteen times the total money previously minted without repayment of the minted money borrowed for which "Reserve Notes" were originally issued.

The money (not yet minted) which is currently being borrowed, is the money contracted for in exchange for the fruits of the sovereign citizens' labors and more commonly referred to as our incomes, making the incomes of Americans an account receivable which is yet to be paid.

* * *

The law prohibits all such creditors from stating they are not creditors because that would be a false statement. The law also prohibits all such creditors from stating they have received an income when, in fact, they

have not, because that too would be a false statement and the law provides criminal penalties for making false and/or fraudulent statements.

OPINION

We must decide whether the petitioner was obligated to file a Federal income tax return, and if so, whether the Form 1040 filed by her satisfied that obligation. The petitioner contends, based upon the document prepared by the United States Taxpayers Union, that her wages need not be reported because they do not constitute income. The premise for this argument is the assertion that Federal Reserve notes are accounts receivable and are not reportable as income until they are paid.

Such contention is without any legal justification and is, in fact, frivolous. The courts have uniformly held that Federal Reserve notes constitute legal tender—"money"—which must be reported on a taxpayer's return in accordance with his method of accounting; and they have uniformly rejected, in a summary fashion, all arguments to the contrary. See, e.g., *United States v. Kelley,* 539 F.2d 1199 (9th Cir. 1976), cert. denied 429 U.S. 963 (1976); *United States v. Wangrud,* 533 F.2d 495 (9th Cir. 1976), cert. denied 429 U.S. 818 (1976); *United States v. Daly,* 481 F.2d 28 (8th Cir. 1973), cert. denied 414 U.S. 1064 (1973); *Gajewski v. Commissioner,* 67 T.C. 181 (1976); *Cupp v. Commissioner,* 65 T.C. 68 (1975), affd. 559 F.2d 1207 (3d Cir. 1977); see also *United States v. Porth,* 426 F.2d 519 (10th Cir. 1970), cert. denied 400 U.S. 824 (1970); *Hartman v. Switzer,* 376 F.Supp. 486 (W.D. Pa. 1974). By statute, it is established that Federal Reserve notes shall be legal tender for all debts, public and private, including taxes, on an equal basis with other coins and currencies of the United States. Coinage Act of 1965, tit. I, sec. 102, Pub. L. 89-81, 79 Stat. 255, 31 U.S.C. sec. 392. The statute is well within the constitutional authority of Congress under article I, section 8 of the U.S. Constitution. *United States v. Wangrud, supra.*

Moreover, the utter lack of merit in the petitioner's contention is shown by the fact that no payment of the so-called "accounts receivable" is contemplated. They are not held in anticipation of collecting any amount thereon; they

are held to be used as currency to make purchases and to conduct financial transactions. What is more, we strongly suspect that the petitioner has in fact used them for such purpose—when she purchases her groceries or pays for her other necessities of life with Federal Reserve notes, she is using legal tender, not accounts receivable.

The petitioner has the burden of proving that she did not receive the income determined by the Commissioner. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering,* 290 U.S. 111 (1933). Since she offered no evidence to refute such determination, she has failed to carry her burden of proof, and we must sustain the Commissioner's determination of deficiency based on the receipt of such income. It also follows that the petitioner was required under section 6012 to file a return for such year. The law is well established that a Form 1040 which discloses no information relating to a taxpayer's income and deductions does not constitute a "return" within the meaning of section 6012. *Commissioner v. Lane-Wells Co.,* 321 U.S. 219 (1944); *Cupp v. Commissioner,* 65 T.C. at 79–80; *Hosking v. Commissioner,* 62 T.C. 635, 639 (1974); *Houston v. Commissioner,* 38 T.C. 486, 491–492 (1962); see also *United States v. Daly, supra* (upholding a criminal conviction for the willful failure to file returns with regard to Forms 1040 not substantially different from those herein); *United States v. Porth, supra.* Hence, the petitioner did not file a 1974 tax return, and the addition to the tax for her failure to file a timely tax return was properly imposed since she offered no excuse for such failure. Sec. 6651(a); *Electric & Neon, Inc. v. Commissioner,* 56 T.C. 1324 (1971), affd. without opinion 496 F.2d 876 (5th Cir. 1974); *Zivnuska v. Commissioner,* 33 T.C. 226, 239 (1959); *Estate of Derby v. Commissioner,* 20 T.C. 164, 170 (1953). In light of the petitioner's failure of proof, the Commissioner's imposition of additions to the tax under sections 6653(a) and 6654 must also be upheld.[2] Rule 142, Tax Court Rules of Practice and

---

[2] Although the petitioner, on her Form 1040, objected to reporting her income because of self-incrimination, she never raised this argument during the trial of this case; thus, we consider it to have been abandoned. In any event, it is also frivolous because the Fifth Amendment does not excuse any individual from reporting his income and filing an income tax return. *United States v. Sullivan,* 274 U.S. 259 (1927); *United States v. Daly,* 481 F.2d 28 (8th Cir. 1973), cert. denied 414 U.S. 1064 (1973); *United States v. Porth,* 426 F.2d 519 (10th Cir. 1970), cert. denied 400 U.S. 824

Procedure; *Vaira v. Commissioner,* 444 F.2d 770 (3d Cir. 1971), affg. on this issue 52 T.C. 986 (1969); *Bixby v. Commissioner,* 58 T.C. 757 (1972); *Rosano v. Commissioner,* 46 T.C. 681 (1966); *Berlin v. Commissioner,* 42 T.C. 355, 357 (1964); *Frankenstein v. Commissioner,* 31 T.C. 431, 436 (1958).

In recent times, this Court has been faced with numerous cases, such as this one, which have been commenced without any legal justification but solely for the purpose of protesting the Federal tax laws. This Court has before it a large number of cases which deserve careful consideration as speedily as possible, and cases of this sort needlessly disrupt our consideration of those genuine controversies. Moreover, by filing cases of this type, the protesters add to the caseload of the Court, which has reached a record size, and such cases increase the expenses of conducting this Court and the operations of the IRS, which expenses must eventually be borne by all of us.

Many citizens may dislike paying their fair share of taxes; everyone feels that he or she needs the money more than the Government. On the other hand, as Justice Oliver Wendell Holmes so eloquently stated: "Taxes are what we pay for civilized society." *Compania de Tabacos v. Collector,* 275 U.S. 87, 100 (1927). The greatness of our nation is in no small part due to the willingness of our citizens to honestly and fairly participate in our tax collection system which depends upon self-assessment. Any citizen may resort to the courts whenever he or she in good faith and with a colorable claim desires to challenge the Commissioner's determination; but that does not mean that a citizen may resort to the courts merely to vent his or her anger and attempt symbolically to throw a wrench at the system. Access to the courts depends upon a real and actual wrong—not an imagined wrong—which is susceptible of judicial resolution. General grievances against the policies of the Government, or against the tax system as a whole, are not the types of controversies to be resolved in the courts; Congress is the appropriate body to which such matters should be referred.

---

(1970); *Hartman v. Switzer,* 376 F.Supp. 486 (W.D. Pa. 1974); cf. *Marchetti v. United States,* 390 U.S. 39, 48–49 (1968).

When frivolous cases such as this are brought to court, there is a question as to whether damages should be imposed under section 6673, which provides:

Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary or his delegate and shall be collected as a part of the tax.

We have decided not to impose such damages in this case, but if tax protesters continue to bring such frivolous cases, serious consideration should be given to imposing such damages. See *Bateman v. Commissioner*, 34 B.T.A. 351 (1936); *Coombs v. Commissioner*, 28 B.T.A. 1216 (1933).

*Decision will be entered for the respondent.*