JAMES B. LOVE AND MARY F. LOVE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Love v. Commissioner
Docket Nos. 10036-80, 20550-80, 20549-80, 20669-80
United States Tax Court
T.C. Memo 1983-648; 1983 Tax Ct. Memo LEXIS 142; 47 T.C.M. (CCH) 162; T.C.M. (RIA) 83648; October 20, 1983. *142 Petitioners established a church and purportedly transferred all their assets and income to the church by virtue of a vow of poverty. Held: 1. Income from pet shop business operated and controlled by petitioners before and after vow of poverty was taxable to petitioners. 2. Mary's salary from Continental Casualty Co. turned over to church was taxable income to petitioners. 3. Petitioners are not entitled to a charitable contribution deduction for Mary's salary. 4. Petitioners are liable for the addition to tax for negligence under sec. 6653(a), I.R.C. 1954. Michael G. Parham, for the petitioners. Larry D. Anderson, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined the following deficiencies and additions to tax in petitioners' Federal income taxes. Deficiency
Additions to Tax [1]
Petitioner(s)
Year
Docket #
6651(a)
6653(a)
6654(a)
James B. & Mary F. Love
1976
10036-80
$2,969
$148
James B. Love
1977
20549-80
4,268
213
[2] *143 Mary F. Love
1977
20550-80
4,268
213
[2]
James B. Love
1978
20669-80
3,424
$856
171
$109
These cases have been consolidated for purposes of trial, briefing, and opinion. After concessions, 2a the issues are (1) whether certain income generated by a business was taxable to petitioners, or instead, to their church, (2) whether certain amounts earned by petitioner, Mary F. Love, that were turned over to the church are includible in her gross income, (3) whether petitioners' are entitled to a charitable contribution deduction for the amounts paid over to the church, and (4) whether petitioners are liable for the additions to tax for negligence. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners James B. Love, (petitioner) *144 and Mary F. Love, (Mary), resided in College Park, Georgia on the date the petition was filed herein. Petitioners filed joint income tax returns for the taxable years 1976 and 1977 with the Internal Revenue Service Center, Chamblee, Georgia. In 1973, petitioner and a partner purchased a pet shop named The Pet Jungle. In 1974, petitioner purchased his partner's interest and became the sole proprietor of The Pet Jungle. [3]
In February, 1976, petitioners started a church that was associated with the Life Science Church. [4] This association continued until April, 1977 when the church became chartered as an auxiliary of the Basic Bible Church of America. In 1979, petitioner disassociated himself with the Basic Bible Church and changed the church's name to The American Bible Church. At all times relevant, the church was headquartered at petitioners' personal residence. After petitioners formed their church in February, 1976, The Pet Jungle *145 became one of the focal points of petitioners' ministry. Religious literature and Bibles were distributed at the pet shop and petitioner spent most of his time there where he also provided religious counseling. On October 20, 1976, both petitioners executed documents purporting to be vows of proverty wherein they purported to transfer all their property and future income to an "Order of the Life Science Church designated as The Order of Almighty God, 683 Chapter." [5] *146 Thereafter, Mary, who was employed as a secretary for Continental Casualty Co., during the years in issue gave her entire salary check to petitioner to deposit in the church's checking account. Petitioner then alloted Mary between ten and fifteen dollars weekly for personal commuting expenses and meals. During this period petitioners and the church had only one checking account which they used for all banking purposes. [6] Although petitioners purportedly transferred all their property to the church, including The Pet Jungle, the title to the property was never placed in the church's name. On January 7, 1977 and January 3, 1978, petitioner received loans from a bank secured by The Pet Jungle's inventory as well as other property reported to be in petitioners' name. On November 18, 1978, petitioner secured another loan and again gave as collateral property that was held in his own name. In addition, on various other loans obtained by petitioner in 1978, he listed himself as self-employed at The Pet Jungle and made no reference to the fact that the church owned the various assets he was using to secure the loans, and represented that he had real estate and automobiles registered in his own name. Petitioners used the single checking account to both purchase items used by the church and for personal expenses and the majority of petitioners personal expenses were paid from this checking account. [7] *147 During 1976 and 1977 petitioners did not include in their gross income the income generated by The Pet Jungle. [8] In addition, Mary claimed a charitable contribution deduction for the full amount of her salary. Respondent determined that petitioners' were taxable on the net income of The Pet Jungle and denied the charitable contribution deduction in its entirety. OPINION The first issue is whether income generated in 1976 and 1977 by a pet shop known as The Pet Jungle is taxable to petitioners, or instead, to their church. Respondent contends that the income generated by the pet shop in 1976 and 1977 is properly includible in petitioners' income since petitioners owned and operated the business. Petitioners counter that their church owned the business and that they are therefore not taxable on the income generated by the business. We disagree and hold for respondent. Section 61(a)(2) provides that gross income means all income *148 from whatever source derived, including gross income derived from business. It is well established that income is taxed to the person or entity who earns it. Lucas v. Earl,281 U.S. 111 (1930). In the instant case, the record reveals that petitioners, not the church, were the owners of the pet shop. Although petitioners executed a vow of poverty whereby they purportedly transferred the pet shop to their church, petitioners at all times continued to treat the pet shop as their own property. [9] *149 Title to the business was never placed in the church's name, petitioners represented in several loan applications that they were the owners of the business, and petitioners used the funds generated by the business to pay for their personal expenses. No records were produced to prove that The Pet Jungle became the property of church nor that anyone was made aware that it was the property of the church. Therefore, we find that petitioners were the owners of the pet shop and taxable on the income generated thereby under section 61(a)(2). The second issue is whether salary earned by Mary that was turned over to the church is taxable to Mary, or instead, to the church. Petitioners contend that Mary was the agent of the church and that these amounts paid to her as salary are therefore not taxable to her. We disagree. Where an agent receives income on behalf of a principal, the income is not taxable to the agent but to the principal. Maryland Casualty Co. v. United States,251 U.S. 342 (1920). Similarly, where a member of a religious order receives income as an agent of and on behalf of the order, and pursuant to a vow poverty remits the income to the order, such income is the income of the order and not of the member. However, where the member of the religious order is not an agent for the order, the taxpayer's assignment of compensation for services is ineffective to relieve *150 the taxpayer from Federal income tax liability. McGahen v. Commissioner,76 T.C. 468, 478-89 (1981), affd.     F.2d     (3rd Cir. 1983). [10]
In the instant case, Mary was performing services as a secretary for Continental Casualty Co. The services Mary performed as a secretary obviously were not the type of services the church was engaged in, and there is insufficient evidence to establish that Mary was acting as the church's agent. Thus, we hold that the compensation for services paid to Mary were earned on her own behalf and are taxable income to her. [11]
The third issue is whether petitioners are entitled to a charitable contribution deduction in 1976 and 1977 for Mary's salary payments that were purportedly turned over to the church. Petitioners claimed a charitable *151 deduction on their 1976 and 1977 Federal income tax for the entire amount of Mary's salary earned as a secretary. Petitioners now concede that at the most they should only be entitled to a charitable contribution deduction equal to 50 percent of her income. Respondent asserts that petitioners are not entitled to any charitable contribution deduction, with which we agree. Section 170(c)(2)(C) provides that in order for a gift to qualify as a charitable contribution, no part of the net earnings of the organization to which the gift is made may inure to the benefit of any private shareholder or individual. The church's net earnings in this case were nothing more than Mary's salary and the income from The Pet Jungle that may have been assigned to the church. Most, if not all, of Mary's and petitioner's personal expenses were paid out of those net earnings by the church and thus it is clear that part of the net earnings of the church inured to Mary's benefit. These facts alone are sufficient to show, without questioning the sincerity of petitioners' religious beliefs, that their church is not an organization to which a deductible gift is contemplated by section 170(a). Oakknoll v. Commissioner,69 T.C. 770 (1978), *152 aff'd. 603 F.2d 211 (2nd Cir. 1973), cert.denied,444 U.S. 872 (1979); Basic Bible Church v. Commissioner,74 T.C. 846 (1980); McGahen v. Commissioner,supra; Rev. Rule 78-232, 1978-1C.B.69. [12]
The final issue is whether petitioners are liable for the additions to tax for negligence under section 6653(a). The burden of proof with respect to this issue is on petitioners. Hatfield v. Commissioner,68 T.C. 895 (1977). Petitioners have offered no evidence to establish that they did not act negligently in failing to report the income earned by their pet shop, or in claiming a charitable contribution deduction for Mary's entire salary. On the record before us, we sustain respondent's determination. Bixby v. Commissioner,58 T.C. 757, 792 (1972). Because of *153 concessions, Decisions will be entered under Rule 155 in Docket Nos. 10036-80, 20549-80, and 20550-80.
Decision will be entered for petitioner in Docket No. 20669-80.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect for the taxable years in issue. ↩
2. Respondent mailed a duplicate original notice of deficiency to Mary F. Love for 1977 for the same deficiency determined against James B. Love.
2a. Respondent now concedes that the only amounts in dispute are income taxes for 1976 and 1977 in the respective amounts of $1,008.58 and $1,758.61 and negligence additions of $50.42 and $87.93 for those years, respectively. Respondent further concedes that no deficiency or additions are owing for the 1978 taxable year.↩
3. The Pet Jungle name was later changed to The American Pet and Hobby Shop. For convenienance sake, we have referred to the pet shop as The Pet Jungle.↩
4. Respondent does not challenge the validity of petitioners' church for the purposes of this case.↩
5. A "note" inserted in the document above petitioners' signatures stated that while these gifts were irrevocable, they will revert to the giver instead of continuing in perpituity if civil government officialdom were to void this act as by, among other, "by blocking the rightful tax-exempt status * * * of the church or order * * *." 6. A second account was opened in the name of the church later.↩
7. Because respondent conceded, for purposes of this case, the validity of petitioners' church and that issue is not otherwise involved in our conclusion, we will not make findings based on the evidence offered by petitioners to support the validity of the church.
8. Petitioner and respondent stipulated at trial the amount of income generated by The Pet Jungle in 1976 and 1977.↩
9. The vows of poverty executed by petitioners in 1976 purportedly transferred all their property and income to the "Order of Life Science Church designated as The Order of Almighty God." Subsequently, petitioners apparently disaffiliated their church from the Life Science Church and affiliated it with the "Basic Bible Church," which they later changed to "American Bible Church." Whether their church continued to be the same church that was the recipient of their vows of poverty we need not decide.
10. See also Pusch v. Commissioner,T.C. Memo 1982-492↩.
11. Petitioners also contend that the profit earned by The Pet Jungle in 1976 and 1977 was really due to Mary's assignment of her income to The Pet Jungle. First, we note that the parties have stipulated what The Pet Jungle's income was in 1976 and 1977. Secondly, petitioners presented no evidence whatsoever to support this assertion and we therefore reject it.↩
12. It can also be argued that by virtue of the "note" inserted in the vows of poverty (see ante) under certain circumstances all the property purportedly given to the church by petitioners would revert to petitioners. If this is true the church would not meet the organizational test that it be operated exclusively for religious purposes. See sec. 1.501(c)(3)-1(b)(4), Income Tax Regs.; Abney v. Commissioner,T.C. Memo 1980- 27↩.